UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JINGQI XIAO (A206-038-153),<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY CORRECTIONAL CENTER,<br><br>Respondent. | No.  1:26-cv-03871-TLN-SCR<br><br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I.      Factual and Procedural History**

Petitioner is a native and citizen of China who lawfully entered the United States on an F-1 student visa on August 29, 2012.  ECF No. 1; ECF No. 7-1 at 1.  Since that time, he got married and had a child who is a U.S. citizen.  ECF No. 1.  Petitioner also concedes that he was convicted of various offenses, including misdemeanor Petty Theft in 2013 and 2015, which were both ultimately dismissed and expunged from his criminal record, and a 2026 misdemeanor DUI charge for which he ultimately entered a no contest plea to reckless driving.[1]  ECF No. 1 at 5-6,

---

[1]  Petitioner was also arrested in June 2015 for battery of an ex-spouse, but that charge was dismissed in furtherance of justice and was ordered sealed by the Santa Clara County Superior

1

21-22, 24-26, 47-50,  For the last conviction, Petitioner served 2 days in jail and was placed on one year of probation.  Id. at 6.  According to Petitioner, "[t]hese records show that Petitioner's past issues are non-violent in nature and that he has taken all available steps to resolve them and clear his record, demonstrating a commitment to rehabilitation."  Id. at 6.  Petitioner's order of removal became final in 2022, but—as explained in more detail below—the government did not attempt to remove him at the time.  Through counsel, Petitioner filed an Application for a Stay of Deportation or Removal with Immigration and Customs Enforcement ("ICE") on May 11, 2026.  ECF No. 1 at 51-122.

ICE arrested petitioner on **February 25, 2026** after he dropped his son off at school.  ECF No. 1; ECF No. 7-1 at 2.  He remains in immigration detention at the California City Correctional Center, which is located in this judicial district.  ECF No. 1.  In his 2241 petition, petitioner first challenges his prolonged detention without a bond hearing pursuant to the Fifth Amendment Due Process Clause as well as Zadvydas v. Davis, 533 U.S. 678 (2001).  ECF No. 1 at 7-8.  His second claim for relief asserts a due process violation based on the failure to consider the impact of his detention on his wife and child.  Id. at 8-9.  By way of relief, petitioner requests immediate release from detention or, in the alternative, a bond hearing where the government has the burden of demonstrating by clear and convincing evidence that his detention is justified based on his flight risk or danger.  Id. at 9.

The parties agree on the following facts, but dispute their legal significance in this case.  On March 26, 2014, an Immigration Judge ("IJ") ordered petitioner removed to China for failing to maintain the conditions of his nonimmigrant status pursuant to Section 237(a)(1)(C) of the Immigration and Nationality Act.  ECF No. 7-2 (Order of the Immigration Judge); see also ECF No. 7-3 at 6-32 (Oral Decision of the IJ).  Petitioner appealed this order and on August 10, 2015, the Board of Immigration Appeals dismissed petitioner's case.  ECF No. 7-3.  Petitioner then filed a petition for review in the Ninth Circuit Court of Appeals and a temporary stay of removal

Court pursuant to California Penal Code § 851.92 in August 2021.  See ECF No. 1 at 25 (Declaration of Attorney Henry Hu); ECF No. 1 at 40-43 (Order Sealing Arrest Records).  Thus, for various purposes described in the Superior Court's November 1, 2021 Order, "the arrest is deemed not to have occurred."  ECF No. 1 at 40.

apparently existed while the case remained pending.  The petition for review was denied on August 24, 2022.  ECF NO. 7-4.  The Ninth Circuit mandate on appeal issued on October 17, 2022, at which time the temporary stay of removal ended.  Id.

Respondent filed a motion to dismiss[2] and opposition to the § 2241 petition on May 25, 2026.  ECF No. 7.  According to the opposition, Petitioner is still in the 90-day mandatory detention period under 8 U.S.C. § 1231(a)(2).  ECF No. 7 at 4.  However, Respondent also acknowledges that the Ninth Circuit's mandate issued on October 17, 2022 was the final order of removal triggering the statutory 90 day mandatory detention period.  ECF No. 7 at 4 (citing 8 U.S.C. § 1231(a)(1)(B)(ii)).  Respondent thus alternatively contends that "[i]f the court concludes that the 90-day removal period has expired, it still does not require release" in this case.  ECF No. 7 at 4.  If 8 U.S. C. § 1231(a)(6) is the applicable detention statute, Petitioner is not entitled to relief under Zadvydas because his three-month period of detention is presumptively reasonable.  Id.

In his reply and supplemental memorandum in support of his reply, Petitioner emphasizes that the 90-day mandatory detention period ended in January 2023 and he is not subject to detention pursuant to 8 U.S.C. § 1231(a)(2).  ECF No. 9 at 1; see also ECF No. 8.  Instead, his detention is governed by § 1231(a)(6), which is discretionary.  He requests release under appropriate conditions of supervision.  Id. at 4.  According to Petitioner, the government's "prolonged inaction over 3 years creates a presumption that removal is not imminent, and it has offered no concrete evidence to rebut that presumption."  Id. at 6.

**II.      Immigration Detention Framework After a Final Order of Removal**

The detention of noncitizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a).  "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision."

---

[2]  The Court finds it unnecessary to address the merits of Respondent's request to dismiss the pending § 2241 application based on petitioner's previously filed § 2241 petition, which was voluntarily dismissed.  See ECF No. 7 at 2 n. 1.  There is no statutory prohibition on second or successive habeas corpus petitions filed pursuant to 28 U.S.C. § 2241.  Compare 28 U.S.C. § 2255(e); 28 U.S.C. § 2244(a), (b).

Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022).  After this 90 day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'"  Arteaga-Martinez, 596 U.S. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).  Petitioner was ordered removed because he did not maintain the conditions of his nonimmigrant status pursuant which is one of the categories of discretionary detention.  See 8 U.S.C. § 1231(a)(6) (listing noncitizens removable under Section 1227(a)(1)(C)(i)).

The Supreme Court examined the constitutional limits of detention under § 1231(a)(6) in Zadvydas, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]"  533 U.S. at 692 (2001).  Zadvydas read an implicit due process limitation into the immigration statute governing the removal of noncitizens subject to a final order of removal in order to avoid serious constitutional problems.  The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas, 533 U.S. at 693.  As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  Zadvydas, 533 U.S. at 699.  In order to establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six month period of detention.  Id. at 701.  If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  Id.

**III.    Analysis**

In this case, the Court must first determine whether Petitioner is within the 90-day mandatory detention period of § 1231(a)(2).  Despite statutory language to the contrary, Respondent argues that this period of time does not start until a noncitizen is detained by ICE

4

regardless of when the order of removal became final. However, Respondent cites no legal authority for that proposition. The undersigned rejects such an interpretation and is unaware of any court to have adopted it. Accordingly, the undersigned concludes, consistent with 8 U.S.C. § 1231(a)(1)(B)(ii)), that Petitioner's order of removal became final on **October 17, 2022** when the Ninth Circuit issued its mandate and the stay of removal dissolved. Thus, the 90-day mandatory detention period ended on January 15, 2023. Respondent's failure to seek to execute the final order of removal within that time period means, as a practical matter, that Petitioner is now subject to discretionary detention pursuant to 8 U.S.C. § 1231(a)(6).

Having so concluded, the remaining question before the Court is whether Petitioner is entitled to relief under Zadvydas. Respondent's primary argument is that because petitioner has been detained for approximately three and a half months, he is "within the presumptively reasonable six-month detention period" set forth in Zadvydas.[3] However, the fact that a noncitizen has been in custody less than six months does not foreclose a claim that his or her detention is unlawful under Zadvydas. "Zadvydas did not hold that the statute authorizes detention until it approaches constitutional limits; it held that, since interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to authorize detention only for a period consistent with the purpose of effectuating removal." Clark v. Martinez, 543 U.S. 371, 384 (2005) (citing Zadvydas, 533 U.S. at 697-99) (emphasis in original); see also Uzzhina v. Chestnut, No. 1:25-cv-01594-DAD-SCR, 2025 WL 3458787, *3 n. 3 (E.D. Cal. Dec. 2, 2025) ("The fact that a noncitizen has been held in-custody less than six months does not foreclose a claim that his or her detention is unlawful under Zadvydas."); Trinh v. Homan, 466 F.Supp.3d 1077, 1092 (C.D. Cal. 2020) (explaining that "[a]t no point did the Zadvydas Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period"); Medina v. Noem, 794 F. Supp. 3d 365, 375 (D. Md. 2025) (noting that "what Zadvydas did make clear was that it was adopting a presumption—not a conclusive bar to

---

[3] Neither party indicates that Petitioner was detained by ICE during any prior period since his order of removal became final.

adjudication of whether continued detention is authorized that lifts only after six months have elapsed"); Vijdani v. Mattos, No. 2:25-cv-02496-GMN-EJY, 2026 WL 560209, at *3-4 (D. Nev. Feb. 27, 2026) (collecting cases concluding the same).  In this case, Petitioner has overcome the presumption of reasonableness under Zadvydas.  First, the record demonstrates that Respondent made no effort to effectuate Petitioner's final removal order for over three years.  During this period of time, Petitioner was a caretaker to his U.S. citizen child and his wife who was struggling with various mental health disorders.  Nor does Respondent make any argument that Petitioner is a flight risk or a danger based on a single reckless driving conviction during this time period.  Absent such evidence, Petitioner's detention is unmoored from either of the potential justifications for immigration detention.

Nor does petitioner's criminal history or recent release from prison offer an independent basis for ICE to detain petitioner.  Zadvydas repudiated the use of "preventative" immigration detention, i.e., detention for the purposes of "protecting the community[,]" where removal is not reasonably foreseeable.  See Zadvydas, 533 U.S. at 690-91.  The Supreme Court explained:

> [W]e have upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections. Compare [Kansas v. Hendricks, 521 U.S. 346 (2017)] (upholding scheme that imposes detention upon "a small segment of particularly dangerous individuals" and provides "strict procedural safeguards"), and [United States v. Salerno, 481 U.S. 739, 747, 750–752 (1987)] (in upholding pretrial detention, stressing "stringent time limitations," the fact that detention is reserved for the "most serious of crimes," the requirement of proof of dangerousness by clear and convincing evidence, and the presence of judicial safeguards), with Foucha [v. Louisiana, 504 U.S. 71, 81–83 (1992)] (striking down insanity-related detention system that placed burden on detainee to prove nondangerousness). In cases in which preventive detention is of potentially indefinite duration, we have also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps to create the danger. See Hendricks, supra, at 358, 368[.]
>
> The civil confinement here at issue is not limited, but potentially permanent. Cf. Salerno, supra, at 747[,] (noting that "maximum length of pretrial detention is limited" by "stringent" requirements); Carlson v. Landon, 342 U.S. 524, 545–546 [ ] (1952) (upholding temporary detention of [noncitizen] during deportation proceeding while noting that "problem of ... unusual delay" was not present). The provision authorizing detention does not apply narrowly to "a small segment of particularly dangerous individuals," Hendricks, supra, at 368[,] say, suspected terrorists, but broadly to [noncitizens]

6

ordered removed for many and various reasons, including tourist visa violations. See 8 U.S.C. § 1231(a)(6) ...; cf. Hendricks, 521 U.S., at 357–358[,] (only individuals with "past sexually violent behavior and a present mental condition that creates a likelihood of such conduct in the future" may be detained). And, once the flight risk justification evaporates, the only special circumstance present is the [noncitizen's] removable status itself, which bears no relation to a detainee's dangerousness. Cf. id., at 358[;] Foucha, supra, at 82[.]

Moreover, the sole procedural protections available to the [noncitizen] are found in administrative proceedings, where the [noncitizen] bears the burden of proving he is not dangerous, without (in the Government's view) significant later judicial review. Compare 8 C.F.R. § 241.4(d)(1) (2001) (imposing burden of proving nondangerousness upon [noncitizen]) with Foucha, supra, at 82[,] (striking down insanity-related detention for that very reason). This Court has suggested, however, that the Constitution may well preclude granting "an administrative body the unreviewable authority to make determinations implicating fundamental rights." Superintendent, Mass. Correctional Institution at Walpole v. Hill, 472 U.S. 445, 450[ ] (1985) (O'CONNOR, J.); see also Crowell [v. Benson, 285 U.S. 22, 62 (1932)] (Brandeis, J., dissenting) ("[U]nder certain circumstances, the constitutional requirement of due process is a requirement of judicial process"). The Constitution demands greater procedural protection even for property. See South Carolina v. Regan, 465 U.S. 367, 393 [ ] (1984) (O'CONNOR, J., concurring in judgment); Phillips v. Commissioner, 283 U.S. 589, 595–597 [ ] (1931) (Brandeis, J.). The serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any such protection is obvious.

Zadvydas, 533 U.S. 690-92.

Petitioner's detention falls into the category of preventative detention. ICE simply detained him after their mandatory detention authority had expired without any meaningful process—such as a neutral detention hearing—to determine whether such detention was warranted. Respondent does not claim petitioner is a "specially dangerous" individual or that there are special circumstances present that contribute to any such danger. See Zadvydas, 533 U.S. at 690-691 (immigration proceedings "are civil, not criminal, and we assume that they are nonpunitive in purpose and effect."); Doe v. Becerra, 732 F. Supp. 3d 1071, 1078 (N.D. Cal. 2024) ("The Supreme Court held more than a century ago that civil detention of a removeable noncitizen violates the Constitution if it is punitive.") (citing Wong Wing v. United States, 163 U.S. 228, 237–38 (1896)). In sum, Zadvydas does not permit the government carte blanche to detain noncitizens whenever and for whatever length of time it takes to get around to removing

them.  When, as here, the detention is preventative and potentially indefinite, Zadvydas requires more.

Given that Petitioner's current detention of three and a half months is no longer presumptively reasonable and that a public safety rationale cannot independently authorize his detention absent strong procedural protections, the burden shifts to Respondent to demonstrate the reasonable foreseeability of petitioner's removal.  In this case, Respondent does not even argue that Petitioner's removal is reasonably foreseeable.  See ECF No. 9.  Therefore, they have failed to meet their burden under the burden shifting framework of Zadvydas.  Because the continued detention of Petitioner is "unreasonable and no longer authorized," see Zadvydas, 533 U.S. at 680, the undersigned recommends that the habeas petition be granted and Respondent be ordered to immediately release Petitioner.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Respondent's motion to dismiss (ECF No. 7) be denied.

2.  Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED with respect to claim one.[4]

3.  Respondent be directed to immediately release Petitioner.

4.  Respondent be directed to file a notice of compliance within three (3) days of any order adopting these findings and recommendations.

5.  The Clerk of the Court be directed to:

a.  Serve the California City Detention Facility with a copy of any order of release; and

b.  Enter judgment in Petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties

---

[4]  In the interests of judicial economy, any remaining claims in the § 2241 petition are not addressed herein.

8

have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 11, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE